## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELLE AMOROSI | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 06-5524 |
| | : | |
| ANTHONY MOLINO, <u>et al.</u> | : | |

## <u>MEMORANDUM AND ORDER</u>

Kauffman, J.                                                                      March  19 , 2009

Now before the Court are the Motion for Summary Judgment filed by Defendants

Anthony Molino ("Molino") and ARAMARK Healthcare Support Service, Inc. ("ARAMARK"),

and the Motion for Summary Judgment filed by the Methodist Hospital Division of Thomas

Jefferson University Hospitals, Inc. ("Methodist Hospital").

This case arises from the August 16, 2005 dismissal of Plaintiff Michelle Amorosi

("Plaintiff") as an employee of Methodist Hospital's food service operation, which was run by

ARAMARK.  On December 27, 2006, Plaintiff filed a <u>pro se</u> Complaint against Molino,

ARAMARK, and Methodist Hospital (collectively, "Defendants").[1]  The Complaint, construed

liberally, alleges violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101

<u>et seq.</u>; Title VII, 42 U.S.C. §§ 2000e <u>et seq.</u>; and the Philadelphia Fair Practices Ordinance

("PFPO"), Philadelphia Code, ch. 9, §§ 1100 <u>et seq.</u>[2]  Upon refining her claims in her Response,

---

[1]         The Court appointed counsel for Plaintiff on October 31, 2007.

[2]         Plaintiff's <u>pro se</u> Complaint does not identify any statutory provisions or outline specific causes of action.  Defendants assumed for the purposes of their Motions that Plaintiff has brought her suit pursuant to the ADA, Title VII, and the PFPO, and lay out what they believe to be her claims.  <u>See</u>  Molino/ARAMARK Mot. 13-14 n.11.  In her Response to Defendants' Motions, Plaintiff does not dispute Defendants' interpretation of her claims.  <u>See</u> Pl. Resp. 2 n.1 ("Ms. Amorosi, having filed claims pro se admittedly presents a challenge of comprehending her

Plaintiff's remaining claims are four ADA and PFPO disability claims against ARAMARK and

Methodist Hospital, and a PFPO disability claim against Molino in his individual capacity.[3]

Specifically, Plaintiff claims that (1) Defendants discriminated against her based on her

disability; (2) Defendants created a hostile work environment based on her disability; (3)

Defendants failed to accommodate her disability; and (4) Defendants retaliated against her

because of her disability.

Because Plaintiff is not disabled as defined by the ADA and PFPO, and did not seek a

disability-based accommodation, she is unable to make out a prima facie case for any of her

claims.  Accordingly, the Molino/ARAMARK and Methodist Hospital Motions will be granted.


## I. BACKGROUND

In December 2000, Molino, ARAMARK's food service manager, hired Plaintiff as a per

diem food service worker and hostess for Methodist Hospital.  Pl. Dep. 26, 147.  Molino and

Pasquale Epifani ("Epifani"), an employee of Methodist Hospital, jointly supervised Plaintiff

throughout her employment.  Id. at 42.  Originally Plaintiff perceived that she and Molino had a

friendly working relationship.  Id. at 160-70, 412.[4]  This relationship began to deteriorate in

claims and other filings presented to the Court and parties.  Nonetheless, the Defendants get it,
having presented this motion on the described claims." (citations omitted)). Because Plaintiff
agreed with Defendants' interpretation of the pro se Complaint, the Court finds that these causes
of action constitute the entirety of the claims asserted.

[3]     In response to Defendants' Motions, Plaintiff has withdrawn her gender and race
discrimination claims, as well as her ADA claims against Molino in his personal capacity.  Pl.
Resp. 2, 40-41; Pl. Surreply 2.

[4]     According to Plaintiff, "we were close, me and Anthony . . . . [H]e would always
pick me to do extra things, pull me from a station, pull me from hostessing."  Id. at 138-39.

2003.  Id. at 15-16, 29-30, 152-54.  Due to Molino's treatment of her, Plaintiff began suffering

from anxiety and depression, and was diagnosed accordingly in September 2003.  Id. at 24-26,

187-90, 524.  Plaintiff's doctor prescribed Xanax and Paxil to help treat her anxiety and

depression.  Id. at 11.  However, according to Plaintiff, she was "at all times relevant, a qualified

person able to perform the essential functions of her job with or without an accommodation."  Pl.

Resp. 22.

　　　　Plaintiff subsequently complained to Andreé Aubert ("Aubert"), the ARAMARK

manager who oversaw the food services department at Methodist Hospital and was Molino's

supervisor, about the way Molino was treating her at work.  Aubert Dep. 28-29.  In the summer

of 2005, Plaintiff attempted to transfer out of the cafeteria.  Pl. Dep. 128-29.  Molino denied her

request.  Id.  She also called Methodist Hospital administration to request a meeting to discuss

how Molino was treating her and to request a transfer, but no action was taken.  Id. at 50-51.

　　　　On August 12, 2005, Plaintiff used the phone in Molino's office to refill her prescriptions

for Paxil and Xanax.  Id. at 295, 525.  After overhearing Plaintiff's conversation, Molino stated,

"what are you doing on Xanax, there's nothing wrong with you"; "you don't need that"; and "I

take that for headaches."  Id. at 242-44, 304, 524.  He then told her that "it makes you walk

around like a zombie."  Id.  That night Molino called Plaintiff's father to talk about Plaintiff, and

again mentioned that she was "nothing but a walking zombie."  Id. at 229, 231.

　　　　On August 16, Molino and Aubert met with Plaintiff in Molino's office to provide her

with written warnings concerning two work-related incidents.  The meeting was not intended to

be an employment termination meeting.  Aubert Dep. 115-16.  During the meeting, Aubert

showed Plaintiff the written warnings, explained their contents, and asked her to sign them.  Pl.

Dep. 56-57.  However, Plaintiff did not read them and refused to sign them, claiming that she did

nothing wrong.  Id. at 99-101, 354.  Despite assurances that signing the warning would not affect

her employment, Plaintiff left the office and the hospital without completing her shift.  Id. at 111,

357-58.  Aubert and Joseph Micucci ("Micucci"), Methodist Hospital's Director of Human

Resources, then signed the appropriate forms that officially terminated Plaintiff's employment on

the grounds of "job abandonment."  See Employee Action Form ("Termination Form") attached

to Molino/ARAMARK Mot. at Ex. I.


## II.  LEGAL STANDARD

In deciding a motion for summary judgment pursuant to Federal Rule of Civil Procedure

56, the test is "whether there is a genuine issue of material fact and, if not, whether the moving

party is entitled to judgment as a matter of law."  Med. Protective Co. v. Watkins, 198 F.3d 100,

103 (3d Cir. 1999) (citations omitted).  "[S]ummary judgment will not lie if the dispute about a

material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court must examine the evidence in the light most favorable to the non-moving party and

resolve all reasonable inferences in that party's favor.  Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 587 (1986).

The party moving for summary judgment bears the initial burden of showing the basis for

its motion.  See Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001).  If the movant meets that

burden, the onus then "shifts to the non-moving party to set forth specific facts showing the

existence of [a genuine issue of material fact] for trial."  Id.  The mere existence of some alleged

factual dispute will not defeat an otherwise properly supported motion for summary judgment. <u>Anderson</u>, 477 U.S. at 247-48.  Rather, a dispute must exist over a material fact.  <u>Id.</u> Furthermore, "there can be 'no genuine issue as to any material fact' . . . [where the non-moving party's] complete failure of proof concerning an essential element of [its] case necessarily renders all other facts immaterial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

Under the "sham affidavit" doctrine, courts may disregard an affidavit submitted in opposition to a motion for summary judgment "when the affidavit contradicts the affiant's prior deposition testimony."  <u>In re CitX Corp.</u>, 448 F.3d 672, 679 (3d Cir. 2006) (citations omitted). The Third Circuit reasoned that "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."  <u>Martin v. Merrell Dow Pharm., Inc.</u>, 851 F.2d 703, 705 (3d Cir. 1988).

An exception to the doctrine exists where a witness was confused at the earlier deposition or misspoke; in such a case, the Court must consider whether an explanation for the discrepancy was offered in the affidavit.  <u>See</u> <u>id.</u> at 705-06.  However, when "the affiant was carefully questioned on the issue, had access to the relevant information at that time, and provided no satisfactory explanation for the later contradiction, the courts of appeals are in agreement that the subsequent affidavit does not create a genuine issue of material fact."  <u>Id.</u> at 706.

In affidavits prepared after the close of discovery and in response to Defendants' Motions for Summary Judgment, Plaintiff presented a version of events that directly contradicts her

deposition testimony.[5]  Plaintiff made no effort to explain the contradictions until after they were

highlighted in Defendants' Reply Brief.  In her Surreply, Plaintiff argues that her supporting

affidavits (1) "are not in conflict with [her prior] deposition testimony," (2) that Defendants'

attorneys would jump around during deposition questioning, and (3) that "Defendants' questions

are merely poorly put or intentionally done to confuse and misrepresent the record."  Pl. Surreply

2, 4.  Contrary to Plaintiff's assertions in her Surreply, her deposition testimony and submitted

affidavits repeatedly conflict.  Plaintiff has submitted no evidence that she was confused or

misspoke during any part of her deposition regarding the specific subjects her affidavits now

contradict.  Furthermore, Plaintiff's counsel had the opportunity to review her testimony and

submit a correcting affidavit with specific reasons for the corrections.  Thus, it is clear that

Plaintiff has introduced affidavits, prepared after the close of discovery and in response to

Defendants' Motions for Summary Judgment, solely in an effort to create issues of material fact.

Accordingly, the Court will disregard all conflicting facts from Plaintiff's affidavits.


**III.  ANALYSIS**

**A.    Discrimination Claims**

        Plaintiff claims that Defendants committed disability-based discrimination against her

when they (1) terminated her employment and (2) refused to transfer her to another department.

Discrimination claims brought pursuant to ADA and PFPO are analyzed under the burden-

---

        [5]      For example, Plaintiff changes the date that Molino overheard her ordering
medication and first learned of her anxiety problems from August 12, 2005 to almost a year
earlier in September 2004.  She also changes her story regarding whom she spoke with in
ARAMARK and Methodist Hospital administration, when they spoke, and what they discussed.

shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).
<u>See</u> <u>Wishkin v. Potter</u>, 476 F.3d 180, 185 (3d Cir. 2007) (applying analysis to ADA claims);
<u>Joseph v. Cont'l Airlines</u>, 126 F. Supp. 2d 373, 376 (E.D. Pa. 2000) (PFPO claims).  Under this
analysis, the plaintiff first must establish a <u>prima facie</u> case for discrimination by showing (1) she
is a member of a protected class by having a disability; (2) she was qualified for the position she
sought to attain or retain; (3) she suffered an adverse employment action; and (4) the action
occurred under circumstances that could give rise to an inference of intentional discrimination.
<u>See</u> <u>Makky v. Chertoff</u>, 541 F.3d 205, 214 (3d Cir. 2008) (citing <u>McDonnell Douglas</u>, 411 U.S.
at 802).  Under the ADA and PFPO, a "disability" is narrowly defined as either: (a) a physical or
mental impairment that substantially limits one or more of the major life activities of such
individual; (b) a record of such an impairment; or (c) being regarded as having such an
impairment.  42 U.S.C. § 12102(2); Philadelphia Code, ch. 9, § 1102(i)(1).

　　　Defendants argue that Plaintiff cannot establish the requisite <u>prima facie</u> case for
disability employment discrimination because she does not have a disability as defined by the
ADA and PFPO, and therefore is not a member of a protected class.  The Court agrees.  Plaintiff
admits that "[t]here is no dispute that Ms. Amorosi was, at all times relevant, a qualified person
able to perform the essential functions of her job with or without an accommodation."[6]  Pl. Resp.
22.  Because Plaintiff cannot establish that she had a disability as defined by the ADA, she
cannot satisfy her burden of proving a <u>prima facie</u> case of disability discrimination, and summary

---

　　　　　[6]　　　A person may be disabled and still be capable of doing her job without
accommodation.  <u>See</u> 42 U.S.C. §§ 12101(1)(a) ("[P]hysical or mental disabilities in no way
diminish a person's right to fully participate in all aspects of society, yet many people with
physical or mental disabilities have been precluded from doing so because of discrimination").

judgment will be granted on her disability discrimination claims.

**1.      Disability as defined by the ADA**

An impairment that does not substantially limit a major life activity is not a disability as defined by the ADA.  See Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195 (2002). A person is "substantially limited" when she is "[s]ignificantly restricted as to the condition, manner or duration under which [she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."  29 C.F.R. § 1630.2(j)(1)(ii).  In determining whether an individual is substantially limited in a major life activity, courts should consider "the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment."  Id. §§ 1630.2(j)(2)(i)-(iii).  Determining whether an individual is substantially limited in a major life activity also requires an individualized assessment that considers the effects of any mitigating measures taken by the individual.  Sutton v. United Air Lines, Inc., 527 U.S. 471, 482 (1999) ("A 'disability' exists only where an impairment 'substantially limits' a major life activity, not where it 'might,' 'could,' or 'would' be substantially limiting if mitigating measures were not taken.").[7]

_____

[7]      Congress recently enacted legislation that amended the ADA's definition of "disability," and repudiated the Supreme Court's decisions in Sutton and Toyota Motor Manufacturing.  ADA Amendments Act of 2008, Pub. L. No. 110-325, § 4, 122 Stat. 3553 (2008).  However, because the alleged discrimination at issue occurred between 2003 and 2005—before the Amendments were enacted—and because there is nothing in the statutory language that suggests they should apply retroactively, the pre-Amendments standards apply. See, e.g., EEOC v. Agro Distrib. LLC, 2009 U.S. App. LEXIS 959, at *13-16 (5th Cir. Jan. 15, 2009) (citing Rivers v. Roadway Express, Inc., 511 U.S. 298, 313 (1994) ("Even when Congress intends to supersede a rule of law embodied in one of our decisions with what it views as a better

Plaintiff alleges that she has a disability because she suffers "severe anxiety, depression, and panic attacks" that substantially limit her in several major life activities: sleeping, thinking, mobility, and breathing.[8]  Pl. Resp. 21-22.  Under EEOC regulations, major life activities include functions such as breathing.  29 C.F.R. § 1630.2(i).  Sleeping and thinking are also considered major life activities.  See Sloan v. City of Pittsburgh, 110 F. App'x 207, 212 (3d Cir. 2004) ("Difficulty sleeping is a common problem, and not a limitation of a major life activity unless the plaintiff shows a uniquely severe affliction."); Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 307 (3d Cir. 1999) (accepting that thinking is a major life activity).  However, as discussed below, the record does not support Plaintiff's claims of being substantially limited in sleeping, thinking, mobility, or breathing.

a.      **Sleeping**

Plaintiff's only evidence of any sleep problems during the relevant period can be found in her supporting affidavit, which states that when she took medication to help with her panic attacks and anxiety, "[t]he medications caused me not to sleep."  Pl. Aff. ¶ 12.  This single, vague reference to sleep problems does not introduce any evidence about the extent of her sleep

---

rule established in earlier decisions, its intent to reach conduct preceding the 'corrective' amendment must clearly appear.")); Kiesewetter v. Caterpillar, Inc., 2008 U.S. App. LEXIS 21481, at *1-2 (7th Cir. Oct. 9, 2008) ("We use the laws and interpretations that were in force when the complained-of acts occurred.").

[8]      Plaintiff specifically claims that she "suffers dizziness, causing her to turn white and be unable to breath [sic] . . . . Her disability causes lack of mobility and she was required to lie down and be given juices to raise her blood sugar level.  She suffers from insomnia . . . . Clearly, panic attacks, resulting in hospitalization or not, effects [sic] 'thinking' and 'mobility.' 'Breathing' effects [sic] every other bodily function."  Pl. Resp. 22.  Defendants interpret these statements to allege substantial limitations in sleeping, thinking, breathing, and mobility.  Defs. Reply 2-3.

limitations during the relevant period, nor does it establish that her sleep-related problems were "a uniquely severe affliction."  See Sloan, 110 F. App'x at 212.  Therefore, the Court cannot find that a reasonable jury could conclude that Plaintiff is substantially limited in the major life activity of sleeping.

### b.    Thinking

The record also does not support Plaintiff's claim that she was substantially limited in the major life activity of thinking.  The only mention of any potential limitation of Plaintiff's thinking is a conclusory statement in her Response Brief to Defendants' Motions that states "[c]learly, panic attacks, resulting in hospitalization or not, effects [sic] thinking."  Pl. Resp. 22. Plaintiff offers no evidence that her depression, anxiety, or panic attacks affected her thinking. Therefore, the Court cannot find that a reasonable jury could conclude that Plaintiff is substantially limited in the major life activity of thinking.

### c.    Mobility

Plaintiff's claim that her impairment significantly limited her mobility similarly fails to establish she suffered a disability as defined by the ADA.  Plaintiff provides no legal support for her argument that the general concept of mobility should be considered a major life activity. However, even if it were a major life activity pursuant to the ADA, her claim is unsupported by the record.  Plaintiff testified that she could work, Pl. Resp. 22, care for herself and others, Pl. Dep. 317-18, and walk.  Id. at 198.  The only evidence of any limitation on Plaintiff's mobility is in her affidavit where she stated that she suffered an average of one panic attack a week during which she had to "sit or lie down" and be given juice to raise her blood sugar level.  Pl. Aff. ¶ 22. However, having to temporarily sit or lie down is not sufficient evidence of a substantial

limitation on Plaintiff's mobility.  Therefore, even assuming that mobility is a major life activity, the Court cannot find that a reasonable jury could conclude that Plaintiff's mobility is substantially limited.

### d.      Breathing

Plaintiff offers two pieces of evidence to support her claim that her breathing was substantially limited.  First, in her affidavit she stated that when she had panic attacks on average of once a week, she, among other things, "could not breath [sic] requiring that [she] sit or lie down."  Pl. Aff. ¶ 22.  Second, she provides a medical record from September 2004, which, inter alia, reports Plaintiff complaining of "hyperventilation" and includes the doctor's "IMP," or impression, that Plaintiff suffered from "hyperventilation syndrome."  Pl. Medical Rec. However, Plaintiff testified that her medication helped alleviate the symptoms of her anxiety, Pl. Dep. 14-15, and further testified several times during her deposition that she was able to do her work even when upset by Molino's treatment of her.  See, e.g., id. at 45.  When discussing the reasons for the times she did miss work during her employment, Plaintiff did not mention any breathing issues.  See id. at 46.  Because the record reflects that Plaintiff's breathing problems occurred only on average of once a week, her prescribed medications were effective in treating her anxiety symptoms and she has made no affirmative showing detailing the length or severity of her breathing problem episodes, the Court cannot find that a reasonable jury could conclude that she is substantially limited in the major life activity of breathing.

### 2.      Regarded as having such an impairment

An individual is regarded as disabled when "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or

(2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially

limits one or more major life activities." Sutton, 527 U.S. at 489. "In both cases, it is necessary

that a covered entity entertain misperceptions about the individual—it must believe either that

one has a substantially limiting impairment that one does not have or that one has a substantially

limiting impairment when, in fact, the impairment is not so limiting." Id. "[T]he mere fact that

an employer is aware of an employee's impairment is insufficient to demonstrate . . . that the

employer regarded the employee as disabled." Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir.

1996); see also Sarko v. Penn-Del Directory Co., 968 F. Supp. 1026, 1035 (E.D. Pa. 1997)

(finding no evidence that the defendant regarded the plaintiff as having a substantially limiting

disability, even though her supervisors were aware of her depression, where the defendant trusted

plaintiff with a full range of job responsibilities, offered her a promotion, and the plaintiff

testified that she was able to work effectively "as the company saw it").

Plaintiff alleges that Molino regarded her as having a disability; specifically, "at the very

least, the perception is that Defendants regarded Ms. Amorosi as having a disability in the major

life activity of working . . . [and] in almost every life activity in which the ability to remain fully

alert would be important." Pl. Resp. 25-26. Plaintiff's deposition pointed to two occasions in

mid-August 2005 where Molino called her a "zombie" as proof that he considered her disabled.

See Pl. Dep. 244, 304-05. Plaintiff cites Antol v. Perry, 82 F.3d 1291 (3d Cir. 1996), to support

her position that name-calling that relates to a disability limitation is alone sufficient to establish

disability animus. In Antol, the Third Circuit found that an employer who had called the

plaintiff, an individual with a seizure disorder, a "'spasm head' often enough for [the plaintiff] to

state that he had become accustomed to it, support[ed] an inference of discrimination" and was

more than a mere "stray remark." Id. at 1301.

There is nothing in the record, however, that establishes that Molino's comments are anything more than stray remarks, or that any other supervisor regarded Plaintiff as disabled in any way. Unlike in Antol, Plaintiff can cite nothing more than two occasions of name-calling over the course of four-and-a-half years of employment as proof that Molino considered her disabled. In fact, the evidence overwhelmingly establishes that Molino and other superiors thought Plaintiff was a qualified individual with no substantial limitations on her ability to work. Indeed, Plaintiff admits that "[t]here is no dispute that Ms. Amorosi was, at all times relevant, a qualified person able to perform the essential functions of her job with or without an accommodation." Pl. Resp. 22. Until she was terminated in 2005, Plaintiff had never received a written discipline, Pl. Dep. 238, and had consistently received favorable reviews and performance appraisals. See Plaintiff's Reviews, attached to Pl. Resp. at Ex. 2. Moreover, despite Molino's harsh treatment beginning in 2003, he continued to choose Plaintiff to work with him at catering functions and promoted her to lead server in 2004. Pl. Dep. 139, 150-52. When Molino denied Plaintiff's request to transfer, she asserted in her deposition that the denial was "because he wanted me there because he always thought I was a great employee." Id. at 137, 138. Furthermore, when Molino learned that Plaintiff was taking medication to combat anxiety, Molino stated "[w]hat are you doing on Xanax, there's nothing wrong with you." Id. at 243. Accordingly, no reasonable jury could conclude that Defendants regarded Plaintiff as disabled.

### 3.      Record of impairment

Having a record of impairment means that an individual "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more

major life activities." 29 C.F.R. § 1630.2(k). "A plaintiff attempting to prove the existence of a 'record' of a disability still must demonstrate that the recorded impairment is a 'disability' within the meaning of the ADA." Tice v. Centre Area Transp. Auth., 247 F.3d 506, 513 (3d Cir. 2001); see also Buskirk v. Apollo Metals, 116 F. Supp. 2d 591, 600 (E.D. Pa. 2000) ("If an impairment does not substantially limit a major life activity, a history of those same impairments cannot constitute a record of impairment."). Plaintiff has not presented evidence, medical or otherwise, regarding the extent of her alleged impairments. Additionally, Plaintiff has presented evidence that Molino told her specifically that he did not regard her as being disabled even after learning that she took medication for anxiety. Therefore, Plaintiff fails to demonstrate the existence of a record of disability within the meaning of the ADA.

**B.      Hostile Work Environment Claim**

Plaintiff asserts that Molino created a hostile work environment as defined by the ADA and PFPO[9] when he called her a troublemaker, an asshole, a "f—" idiot, and a walking zombie; subjected her to "menacing anger"; accused her of multiple unsubstantiated work-related offenses; and subjected her to "an abusive working environment." See Pl. Resp. 40. A claim for hostile work environment based on disability requires an evidentiary showing that, inter alia, the plaintiff is a qualified individual with a disability under the ADA. Walton v. Mental Health Ass'n of Se. Pa., 168 F.3d 661, 667 (3d Cir. 1999). As discussed above, Plaintiff cannot establish that she was a qualified individual with a disability, and therefore, fails to make out a prima facie case for hostile work environment based on disability discrimination. Accordingly,

_____

[9]      Claims arising under PFPO are analyzed under the same legal framework as claims arising under the ADA. Joseph, 126 F. Supp. at 376.

because Plaintiff has failed to show a genuine issue of material fact, summary judgment will be granted on the ADA hostile work environment claim.

**C.      Reasonable Accommodation Claim**

Plaintiff claims that Defendants should have accommodated her disability when she attempted to transfer to a job where Molino would not supervise her.  As discussed above, Plaintiff cannot establish that she was a qualified individual with a disability as defined by the ADA.  Furthermore, Plaintiff admits that "[t]here is no dispute that Ms. Amorosi was, at all times relevant, a qualified person able to perform the essential functions of her job with or without an accommodation."  Pl. Resp. 22.  Accordingly, because Plaintiff has failed to show a genuine issue of material fact, summary judgment will be granted on this claim.

**D.      Plaintiff's Retaliation Claims**

Plaintiff claims that Defendants retaliated against her when they (1) refused to transfer her after she requested an accommodation, and (2) terminated her employment after she requested an accommodation.  "To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."  Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997).  The record, however, fails to establish that Plaintiff engaged in any protected employee activity when requesting a transfer.  Thus, Plaintiff fails to establish a prima facie case.

Plaintiff alleges that beginning in 2004, Defendants "began their campaign of retaliation" against her when they refused to grant her an "accommodation" to transfer on three separate

occasions "because of the treatment that they contend made her a 'walking zombie.'"  See Pl. Resp. 34, 36.  However, Plaintiff has presented no evidence that she requested any transfer between 2004 and 2005 for the ADA-protected purposes of either accommodating a disability or in response to ADA-violating practices at Methodist Hospital.  Instead, the evidence overwhelmingly establishes that when Plaintiff requested a transfer, she merely complained about her difficulty working for Molino—an unprotected activity.  See Barber v. CSX Distrib. Servs., 68 F.3d 694, 701-702 (3d Cir. 1995) (holding that when an employee complains about unfair treatment in general, but does not specifically complain about discrimination, that conduct does not constitute the requisite "protected conduct" to establish a prima facie case of retaliation).  Furthermore, Plaintiff testified that she thought Molino refused to sign transfer papers for her, not because he was retaliating against her, but because he was "picking up for me in a way, that he didn't want to see me lower myself to wash toilets . . . [and] because he wanted me there because he always thought I was a great employee."  Id. at 137, 138.  Additionally, Plaintiff stated that she never even had any opportunity to discuss a possible transfer with hospital administration.  Pl. Dep. 50-51, 57-59.  Plaintiff's second allegation that Defendants retaliated against her by terminating her employment when she requested an accommodation is similarly unsupported by the record.  Pl. Resp. 34.

**E.    Plaintiff's Claims Against Molino in his Individual Capacity**

Molino contends that Plaintiff's harassment, discrimination, and retaliation claims against him in his individual capacity pursuant to the PFPO must be dismissed.  Under the PFPO, individuals may be held liable if they "aid, abet, incite, compel or coerce the doing of any unfair employment practice."  Philadelphia Code, ch. 9, § 1103(A)(7).  Because the Court finds that

Plaintiff has failed to show a genuine issue of material fact regarding any alleged unfair

employment practices by Defendants ARAMARK or Methodist Hospital, Molino is not liable in

his individual capacity under the PFPO.


**IV.  CONCLUSION**

For the reasons discussed above, the Molino/ARAMARK and Methodist Hospital

Motions will be granted.  An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHELLE AMOROSI** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 06-5524** |
| | : | |
| **ANTHONY MOLINO, et al.** | : | |

## ORDER

**AND NOW**, this   19th   day of March, 2009, upon consideration of Defendants'

Motions for Summary Judgment (docket nos. 29, 30) and all responses thereto, and for the

reasons stated in the accompanying Memorandum, it is **ORDERED** that the Motions are

**GRANTED**, and the Clerk of the Court shall mark this case **CLOSED**.


**BY THE COURT:**


/s/ Bruce W. Kauffman
**BRUCE W. KAUFFMAN,  J.**

-18-