# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELLE AMOROSI, <br><br> Plaintiff, <br><br> v. <br><br> ANTHONY MOLINO, et al., <br><br> Defendants. | CIVIL ACTION <br><br> No. 06-5524 |

Pollak, J.  August 2, 2010

## OPINION

Michelle Amorosi ("plaintiff") filed suit against ARAMARK Healthcare Support Services LLC ("ARAMARK"), Methodist Hospital Division of Thomas Jefferson University Hospitals, Inc. ("Methodist Hospital"), and Anthony Molino ("Molino") (collectively, "defendants"), alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et seq.*; and the Philadelphia Fair Practices Ordinance ("PFPO"), Phila. Code, ch. 9 §§ 1100 *et seq.*  In her complaint, plaintiff claimed that, as a result of her disability, defendants (1) discriminated against her, (2) created a hostile work environment, (3) failed to accommodate her needs, and (4) retaliated against her.  On March 19, 2009, Judge Kauffman signed an order granting defendants' motion for summary judgment, (docket no. 51), which was docketed the following day.  In an accompanying

memorandum, Judge Kauffman held that plaintiff (1) was not disabled within the meaning of the ADA and PFPO, (2) did not seek disability-based accommodations, and (3) had not engaged in a protected activity that could give rise to a retaliation claim. Currently pending before this court are (1) three motions filed by plaintiff to vacate the memorandum and order granting summary judgment and/or to enforce settlement (docket nos. 52, 72 & 73), (2) plaintiff's motion for reconsideration of the summary judgment order (docket no. 53), and (3) an application for taxable costs submitted pursuant to Fed. R. Civ. P. 54(d)(1) by defendants ARAMARK and Molino (docket no. 54).[1] All of the motions are opposed.

**I.**

Plaintiff has filed three motions to vacate this court's summary judgment memorandum and order in light of an alleged settlement agreement. Two of these motions also seek enforcement of that agreement. In each motion, Amorosi alleges that, on March 20, 2009, she reached an agreement with Anne Martinez, counsel for ARAMARK and Molino, to settle this case for the sum of $40,000. Docket No. 52, at 1. Plaintiff alleges that Martinez then offered to call Judge Kauffman to inform him of the

---

[1] Plaintiff has also filed two motions for leave to appeal *in forma pauperis* (docket nos. 59 & 65) from Judge Kauffman's summary judgment order. Judge Kauffman previously granted plaintiff leave to proceed *in forma pauperis*, and "[a] party who was permitted to proceed in forma pauperis in the district-court action . . . may proceed on appeal in forma pauperis without further authorization." Fed. R. App. P. 24(a)(3). Plaintiff is therefore already entitled to proceed *in forma pauperis* on appeal, and her motions will accordingly be dismissed as moot.

settlement. *Id.* at 2. During that call, Judge Kauffman's law clerk informed Martinez that summary judgment had been granted to the defendants. *Id.* Martinez later informed plaintiff's counsel that defendants were reassessing their position regarding the settlement. *Id.* Amorosi believes that defendants could not, at that time, back out of the alleged settlement, and thus seeks vacatur of Judge Kauffman's summary judgment order and enforcement of the settlement. Amorosi fails to specify the basis for her vacatur request, but I construe the request as one brought pursuant to Fed. R. Civ. P. 60(b)(6), which allows this court to "relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any . . . reason that justifies relief" and that is not covered by the other sections of Fed. R. Civ. P. 60(b).[2]

In order to seek relief under Rule 60(b)(6), the plaintiff must encounter "such extreme and unexpected hardship" that failure to vacate the judgment would be inequitable. *Sawka v. Healtheast, Inc.*, 989 F.2d 138, 140 (3d Cir. 1993). It is settled,

---

[2] The other sections of Rule 60(b) allow relief from a judgment, order or proceeding based on:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable.

Fed. R. Civ. P. 60(b).

however, that "breach of a settlement agreement does not qualify as an 'extraordinary circumstance' as required to set aside a dismissal order under Rule 60(b)(6)." *Shaffer v. GTE*, 284 F.3d 500, 504 n.4 (3d Cir. 2002) (so holding in the context of Fed. R. Civ. P. 41). This is because Amorosi "may file a separate action [in contract] on the settlement agreement." *Sawka*, 989 F.2d at 140. Accordingly, plaintiff's motion to vacate will be denied.

Moreover, although Amorosi may file a separate enforcement action, this court lacks jurisdiction to enforce any settlement reached by the parties as part of this lawsuit. "'Enforcement of the settlement agreement . . . is more than a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction.'" *Shaffer*, 284 F.3d at 504 (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994)). Plaintiff's attempt to enforce the settlement is one for breach of contract that implicates "facts . . . quite separate from the facts to be determined in the principal suit." *Kokkonen*, 511 U.S. at 381. Thus, "unless a settlement is part of the record, incorporated into an order of the district court, or the district court manifested an intent to retain jurisdiction, it has no power beyond the Rules of Civil Procedure to exercise jurisdiction over a petition to enforce a settlement." *Sawka*, 989 F.2d at 141. Judge Kauffman's summary judgment opinion, of course, said nothing at all about the alleged settlement. Accordingly, "[t]o the extent plaintiff's motion can be construed as a motion to enforce [a] settlement agreement entered into by the parties in this action, it must be" dismissed "for lack of subject matter

jurisdiction." *Lee v. City of Philadelphia*, No. 06-518, 2008 WL 4601913, at *2 (E.D. Pa. Oct. 14, 2008) (Shapiro, J.).

## II.

Plaintiff alternatively seeks reconsideration of Judge Kauffman's memorandum and order granting summary judgment to the defendants. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Accordingly, reconsideration is appropriate if the moving party shows "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Where errors of law or fact are alleged, factual or legal issues may be reconsidered if they were "overlooked by the court in its decision," but "[a] motion for reconsideration is not properly grounded on a request that a court reconsider repetitive arguments that have [been] fully examined by the court." *Blue Mountain Mushroom Co. v. Monterey Mushroom, Inc.*, 246 F. Supp. 2d 394, 398-99 (E.D. Pa. 2002) (internal quotation marks omitted).

Plaintiff's motion advances six arguments in favor of reconsideration. First, plaintiff challenges Judge Kauffman's conclusion that Molino's references to her as a "walking zombie" were stray remarks that did not rise to the level of "proof that he

considered her disabled." *Amorosi v. Molino*, No. 06-5544, 2009 WL 737338, at *6 (E.D. Pa. Mar. 19, 2009). But the cases on which Amorosi relies address the separate question of when particular statements or actions constitute evidence of bias, and none of those cases compels the conclusion that Molino's remarks indicate that he regarded plaintiff as disabled. This argument therefore does not present a proper basis for reconsideration.

Second, plaintiff claims that Judge Kauffman incorrectly accepted defendants' versions of the facts in concluding that Amorosi quit her job. Even assuming that plaintiff's argument correctly interprets Judge Kauffman's summary judgment memorandum, however, the question of whether Amorosi quit her job or was fired was immaterial to Judge Kauffman's reasons for granting summary judgment – which, as noted above, were that plaintiff (1) was not disabled within the meaning of the ADA and PFPO, (2) did not seek any disability-based accommodations, and (3) had not engaged in a protected activity that could give rise to a retaliation claim.[3] Plaintiff's third argument, that it would be a reasonable inference to conclude that her panic attacks and anxiety were due to Molino's treatment, fails for the same reason – the cause of plaintiff's anxiety is not pertinent to Judge Kauffman's summary judgment memorandum. Similarly, although plaintiff challenges Judge Kauffman's decision to disregard "conflicting facts from plaintiff's affidavits" on the ground that Amorosi submitted "affidavits . . . solely in an effort to create issues of material fact," *Amorosi*, 2009 WL 737338 at *3, she points to

---

[3] Plaintiff's asserted protected activity – her request to be transferred – is not related to the question of whether she was fired or quit her job.

no disregarded facts, which, if accepted, would have altered his summary judgment ruling. Each of these contentions accordingly fails to provide a basis for reconsideration.

Amorosi also asserts that her anxiety and panic attacks rendered her disabled as defined by the ADA. However, as the Third Circuit ruled in *Taylor v. Phoenixville School District*, 184 F.3d 296, 306 (3d Cir. 1999), one or more of plaintiff's major life activities must be substantially impaired by her disability in order for her to be actually disabled under the ADA. And while Amorosi may have experienced anxiety and panic attacks, she points to no facts which indicate that Judge Kauffman erred in concluding that plaintiff's sleeping, thinking, mobility, and breathing were not significantly impaired. Further, while Amorosi asserts that her statement is not tantamount to an admission that she is not disabled, Judge Kauffman did not treat it as such an admission.

Finally, plaintiff claims that Molino retaliated against her by firing her after she engaged in the protected activity of requesting a transfer. But plaintiff's argument does not contest Judge Kauffman's conclusion that her transfer request was not made either to accommodate a disability or in response to ADA violations.

In short, plaintiff has presented no valid reason for reconsideration of Judge Kauffman's summary judgment memorandum and order, and her motion will accordingly be denied.

### III.

Defendants ARAMARK and Molino seek taxable costs pursuant to Fed. R. Civ. P. 54(d)(1), which states in pertinent part that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." The costs a prevailing party may receive are delimited by 28 U.S.C. § 1920, which lists the following as reimbursable costs:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title. A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1920. *See also Reger v. The Nemours Found., Inc.*, 599 F.3d 285, 288 (3d Cir. 2010) (explaining that the costs awarded under Rule 54(d)(1) are limited by 28 U.S.C. § 1920). When a cost falls within the bounds of § 1920, however, "there is a strong presumption that [it is] to be awarded." *Id.* (internal quotation marks omitted). In order to ensure that the costs are reasonable, the prevailing party should nevertheless provide an itemized list of each taxable cost. *See Seidman v. Am. Mobile Sys.*, 965 F. Supp. 612, 624 (E.D. Pa. 1997).

In this case, defendants seek reimbursement of $4,151.90 in court reporter fees for transcripts of depositions. This court has the discretion to award or deny costs associated with depositions, duplication of documents, and witnesses. *E.g., Copperweld Steel Co. v.*

*Demag-Mannesman-Bohler*, 624 F.2d 7, 9 (3d Cir. 1980).  Section 1920, however, limits an award of the taxable costs for deposition transcripts to situations in which the transcript was "necessarily obtained for use in the case."  28 U.S.C. §§ 1920(2) & (4). This standard includes materials which were "reasonably necessary for use in the case, even if they are ultimately not used to dispose of the matter," but not items "produced solely for discovery" or "that merely added to the convenience of the counsel."  *In re Williams Sec. Litig.-WCG Subclass,* 558 F.3d 1144, 1147-48 (10th Cir. 2009) (internal quotation marks omitted); *see also Nugget Distribs. Co-op of Am., Inc.*, *v. Mr. Nugget, Inc.*, 145 F.R.D. 54, 58 (E.D. Pa. 1992) (awarding the "costs and expenses incurred in depositions which were reasonably necessary to the preparation of trial").

Defendants have provided an itemized list of the transcripts for which they seek reimbursement, including (1) the identity of the deponent, (2) the date of the deposition, and (3) the associated court reporter cost.  Moreover, at least one of the relevant depositions was referenced in Judge Kauffman's summary judgment memorandum, and there is no indication that any of the other depositions was unnecessary to the case. Defendants have, in other words, demonstrated a presumptive entitlement to reimbursement for the transcript costs.

Amorosi nevertheless objects to awarding defendants taxable costs on several grounds.  Among plaintiff's arguments is that it would be inequitable to assess costs against her because she is proceeding *in forma pauperis*.  This fact does not

"automatically" entitle plaintiff to a reduction in taxable costs. *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 464 (3d Cir. 2000). "[A] party may," however, "be exempted from costs if [s]he is in fact indigent, if [s]he has adduced evidence that [s]he is indigent, and if the district court sees fit to reduce the costs award imposed for reasons of equity." *Id.* Here, plaintiff's sworn petition Statement in Support of Request to Proceed *In Forma Pauperis* (Docket No. 1, at 2), reveals that she has not been employed since August 2005 and has no bank accounts. Moreover, since early 2006, plaintiff's only income has been in the form of child support, and her three children remain dependent on her. In light of plaintiff's extreme indigency, I conclude that "to force plaintiff[] to pay the cost award" requested by defendants, or any award of costs, "would be unduly burdensome." *Lindsey v. Vaughn*, No. 93-cv-2030, 2001 WL 1132409, at *2 (E.D. Pa. Sept. 24, 2001). Accordingly, defendants' application for taxable costs will be denied.[4]

### IV.

For these reasons, plaintiff's motion to vacate will be denied, plaintiffs' motions to enforce settlement will be denied in part and dismissed in part, plaintiff's motion for

---

[4] The Third Circuit has also held that "a finding of bad faith on [the] part [of the losing party] would be a reason not to reduce costs." *In re Paoli*, 221 F.3d at 468. Plaintiff's act of "introduc[ing] affidavits . . . solely in an effort to create issues of material fact," *Amorosi*, 2009 WL 737338, at *3, may arguably be said to constitute bad faith. But those affidavits were "prepared after the close of discovery and in response to Defendants' Motions for Summary Judgment," *id.*, and therefore are unrelated to the costs defendants expended for court reporters during the discovery phase of this case. Moreover, I note that plaintiff's good faith in bringing this case and litigating it to summary judgment has not been questioned.

reconsideration will be denied, defendants' motion for taxable costs will be denied, and plaintiff's motions for leave to appeal *in forma pauperis* will be dismissed as moot. An appropriate order accompanies this opinion.